UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL AFREMOV,                                        Case No. 09-CV-3678 (PJS/JSM)

            Plaintiff,

v.                                                              ORDER

SULLOWAY & HOLLIS, P.L.L.C.;
MICHEL A. LAFOND; JOHN R.
HARRINGTON; and MICHAEL M.
LONERGAN,

            Defendants.

Gerald H. Fornwald, Robert R. Weinstine, and Sofia A. Estrellado, WINTHROP & WEINSTINE, P.A., and Sandra K. Kensy, ATTORNEY AT LAW, for plaintiff Michael Afremov.

Charles E. Jones, M. Gregory Simpson, and Megan D. Yelle, MEAGHER & GEER, PLLP, for defendants Sulloway & Hollis, P.L.L.C. and Michel A. LaFond.

Richard J. Thomas and Bryon G. Ascheman, BURKE & THOMAS, PLLP, for defendants John R. Harrington and Michael M. Lonergan.

Plaintiff Michael Afremov became extremely wealthy when he won a lawsuit against his former business partners.  Afremov committed perjury in the course of that litigation, filed false tax returns to bolster his perjured testimony, and, long after the litigation concluded, pleaded guilty to federal tax charges.  Afremov brings this action against the attorneys (Michel LaFond, John Harrington, and Michael Lonergan) and the law firm (Sulloway & Hollis, P.L.L.C. ("S&H")) who represented him in the lawsuit against his former business partners.  Afremov asserts numerous claims in an attempt to shift some of the responsibility for his criminal acts onto the defendants.  Afremov also alleges that the defendants caused him to sign exploitative fee agreements and then made matters worse by overcharging him under those fee agreements.

Finally, Afremov alleges that S&H and LaFond improperly induced him to pay the fees of attorneys who represented S&H and LaFond in connection with the criminal investigation that led to Afremov's conviction. Afremov seeks to recover millions of dollars in fees that he paid to his former attorneys and to the criminal-defense attorneys who represented S&H and LaFond.

This matter is before the Court on three motions: (1) Afremov's motion for partial summary judgment on some of his claims against the defendants; (2) S&H and LaFond's motion for partial summary judgment on some of Afremov's claims against them; and (3) Harrington and Lonergan's motion to dismiss or for summary judgment on all of Afremov's claims against them. The Court held two lengthy hearings on the motions. For the reasons described at those hearings, the parties' motions are denied except as set forth below.

## I. FACTS

The parties are familiar with the facts — and the Court will be issuing detailed findings of fact after the trial of this matter — so the Court merely summarizes the facts here.

Afremov is one of three founders of AGA Medical Corporation ("AGA"), a medical-device company. In October 2002, the other co-founders terminated Afremov's employment. Afremov retained LaFond to represent Afremov in a lawsuit against the other founders. LaFond, a partner at S&H, was Afremov's longtime lawyer and friend. LaFond sought the assistance of two other S&H partners — Harrington and Lonergan — as well as other lawyers who are not parties to this lawsuit. The lawsuit was filed in Minnesota state court.

In the course of Afremov's state-court action, the defendants learned that Afremov had taken payments from two AGA suppliers. The defendants filed counterclaims against Afremov, alleging that these payments were improper "kickbacks" and that, in accepting the kickbacks,

Afremov had violated his legal duties to AGA.  Afremov defended himself by claiming that these payments were not kickbacks; rather, he said, the two suppliers had merely advanced funds to him to invest in Persian rugs on their behalf.  Everyone agrees that Afremov's account (which the Court will refer to as the "rug story") was false, but the parties hotly dispute who came up with the rug story and whether Afremov's attorneys knew that the rug story was false.  There is no dispute, however, that *Afremov* knew that the rug story was a lie.  Nonetheless, with the help of his accountants and attorneys, Afremov executed a sworn affidavit that was filed in the state-court action, and he filed original and amended tax returns under penalty of perjury, all in support of the rug story that he knew to be false.  The two AGA suppliers also amended their tax returns, so that what they had previously treated as payments to Afremov were instead treated as loans.

Eventually, the United States Department of Justice got wind of Afremov's activities and indicted him and others for a number of crimes, including committing mail fraud and filing false tax returns.  Afremov retained a prominent criminal-defense attorney — former Assistant United States Attorney Douglas Kelley — to represent him, and he also retained S&H and LaFond to assist Kelley in the criminal case.  Sometime later, both S&H and LaFond hired their own criminal-defense counsel, and Afremov agreed to pay the fees of those attorneys.  Thus, at one point Afremov was simultaneously paying:  (1) the fees that defendants incurred in representing Afremov in the state-court action against his former business partners; (2) the fees that Kelley incurred in representing Afremov in connection with the criminal investigation; (3) the fees that defendants incurred in assisting Kelley in the criminal investigation; (4) the fees that S&H's criminal-defense lawyers incurred in representing S&H in connection with the criminal investigation; (5) the fees that LaFond's criminal-defense lawyers incurred in representing

LaFond in connection with the criminal investigation; and even (6) the fees that LaFond incurred

in talking with his own criminal-defense lawyers.

Notwithstanding the existence of the criminal investigation into the conduct of both

Afremov and LaFond, LaFond and other S&H lawyers continued to represent Afremov in the

civil case. That case concluded with the state court ordering Afremov's opponent to buy out

Afremov's shares of AGA for approximately $300 million — a smashing success for Afremov.

In addition to paying his attorneys their full hourly rates, Afremov also paid them a $7.4 million

"success bonus" pursuant to an amended fee agreement that had been negotiated shortly after

Afremov learned that he was under criminal investigation.

Later, after Afremov replaced Kelley with another attorney, Afremov pleaded guilty to

three counts of filing false tax returns and one count of conspiring to file false tax returns. The

government investigated LaFond in connection with Afremov's criminal activities, but LaFond

was never indicted. Afremov was sentenced to one year of probation and fined $1 million. A

few months later, Afremov brought this lawsuit against S&H and LaFond; he later added claims

against Harrington and Lonergan.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome

of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. Afremov's Motion

Afremov moves for partial summary judgment on two issues. First, Afremov asks for summary judgment that defendants breached their fiduciary duties to him by continuing to represent him in the civil and criminal proceedings after a non-waivable conflict of interest arose. Second, Afremov asks for summary judgment that defendants breached their fiduciary duties to him by inducing him to pay the fees of S&H's and LaFond's respective criminal counsel. In connection with his motion, Afremov seeks disgorgement of nearly $9 million in attorney's fees that he paid after the allegedly non-waivable conflict arose.

As the Court explained at oral argument, the Court is troubled by some of the conduct of S&H and LaFond — particularly their continuing to represent Afremov after LaFond learned that he and Afremov were both subjects of the same criminal investigation. But before making a final decision on Afremov's claims, the Court would like to hear the testimony of the parties and other key witnesses and compile a full trial record. Granting summary judgment to Afremov at this juncture would save little time, as the Court would have to consider much the same evidence in determining whether and to what extent S&H and LaFond should forfeit their fees. *See Gilchrist v. Perl*, 387 N.W.2d 412, 417 (Minn. 1986) (when no actual fraud or bad faith is involved and the client sustained no actual harm, courts should determine the amount of the fee forfeiture by considering the factors outlined in Minn. Stat. § 549.20, subd. 3). Afremov's motion for summary judgment is therefore denied.

### C.  S&H and LaFond's Motion

S&H and LaFond (collectively "LaFond") move for summary judgment on Afremov's claims of fraudulent concealment, negligent concealment, and fraudulent conveyance, and also seek summary judgment on a portion of Afremov's malpractice and fiduciary-duty claims — specifically, the allegations in ¶¶ 71(b), 71(d), 79(b), and 79(d) of the fourth amended complaint. As discussed at the hearing, there are numerous disputed factual issues that preclude summary judgment on many of Afremov's claims.  The Court agrees with LaFond, however, that he is entitled to summary judgment on the claims discussed below.[1]

### 1.  Fraudulent Conveyance

In July 2005, Afremov paid a $7.4 million success bonus to S&H.  A few weeks later, S&H distributed the success bonus to its attorneys and employees, including LaFond, Harrington, and Lonergan.  Afremov contends that this distribution was a fraudulent conveyance under Minn. Stat. § 513.44, which is part of Minnesota's version of the Uniform Fraudulent Transfer Act ("UFTA").  Harrington and Lonergan join LaFond in moving for summary judgment on this claim.

A conveyance is *actually* fraudulent if it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ."  Minn. Stat. § 513.44(a)(1).  Alternatively, a conveyance

---

[1]The Court notes that, in opposing LaFond's motion for summary judgment, Afremov purports to incorporate the facts set forth in the memorandum he filed in support of his own motion for summary judgment.  ECF No. 494 at 4.  The Court rejects this maneuver, which would result in Afremov's brief violating the word-count limits of D. Minn. L.R. 7.1(f), and which would allow Afremov to avoid his obligation to identify specific factual disputes in response to LaFond's motion.  In considering LaFond's motion, therefore, the Court has considered only the evidence and arguments set forth in Afremov's brief in response to that motion.

is *constructively* fraudulent if certain conditions are met.  *Id.* § 513.44(a)(2).  Afremov contends that the distribution was both actually and constructively fraudulent.

### a.  Actual Fraud

UFTA spells out eleven factors — or "badges of fraud" — whose absence or presence may indicate actual fraudulent intent.  These "badges of fraud" include:

> (1) the transfer or obligation was to an insider;

> (2) the debtor retained possession or control of the property transferred after the transfer;

> (3) the transfer or obligation was disclosed or concealed;

> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

> (5) the transfer was of substantially all the debtor's assets;

> (6) the debtor absconded;

> (7) the debtor removed or concealed assets;

> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* § 513.44(b).

Afremov has failed to point to any evidence that would establish any of these badges of fraud.  It is undisputed that LaFond, Harrington, and Lonergan performed work for Afremov; that Afremov paid the success bonus to S&H pursuant to a contract for that work; that S&H distributed the bonus pursuant to a then-existing membership agreement, ECF No. 73 ¶¶ 12-13; and that no member received more than what was called for in the agreement, *id.*  In short, there is no evidence that S&H did *not* receive reasonably equivalent value in exchange for distributing the success bonus; indeed all of the evidence is to the contrary.  *See* Minn. Stat. § 513.44(b)(8).

In addition, there is no evidence that S&H retained possession or control of the money after distribution; that the transfer was concealed from Afremov; that S&H had been threatened with suit before the transfer; that the transfer was of substantially all of S&H's assets; that S&H absconded; that S&H removed or concealed assets; that S&H was insolvent or became insolvent shortly after the transfer; or that S&H transferred its essential assets to a lienor who then transferred the assets to an S&H insider.  *See id.* § 513.44(b)(2)-(7), (9), (11).

In his brief, Afremov asserts — without citing evidence or any portion of the lengthy statutory definition of "insider" — that LaFond, Harrington, and Lonergan were insiders for purposes of UFTA.[2]  At oral argument, however, Afremov admitted that he did not know whether LaFond, Harrington, or Lonergan met the statutory definition of an insider, and he could not point to any evidence in the record that establishes that they were insiders.  ECF No. 512 at 146-47; Minn. Stat. § 513.44(b)(1).

---

[2]The definition depends, in part, on whether the debtor is a partnership or a corporation.  Minn. Stat. § 513.41(7).  S&H is professional limited liability corporation.  ECF No. 73 ¶ 2.

The only possible badge of fraud to which Afremov can point is that, at least in Afremov's view, the transfer occurred shortly after a substantial debt was incurred.  Minn. Stat. § 513.44(b)(10).  Afremov's theory is that defendants were not entitled to the success bonus because they collected it, as Afremov puts it, "in the midst of a severe conflict of interest" that they concealed from him.  ECF No. 494 at 36.  Thus, says Afremov, S&H owed him a substantial debt the moment that he paid the success bonus — specifically, the obligation to return the success bonus.

It may be true that defendants had a conflict of interest with Afremov.  But if they did, no one "concealed" that conflict from Afremov at the time that he paid the success bonus in July 2005.  By that time, Afremov had long been aware that he was facing potential criminal liability.  (Afremov was originally served with grand-jury subpoenas in November 2004 and retained Kelley shortly thereafter.)  Likewise, by that time, Kelley knew that LaFond was also facing potential criminal liability — and LaFond was aware that Kelley knew that LaFond was under criminal investigation.  Kelley II Dep. 67-69.  Whether or not the disclosures made directly to Afremov were sufficient to fulfill defendants' fiduciary duties, nothing in the record supports an inference that defendants were intentionally attempting to conceal their liability to Afremov in connection with an allegedly fraudulent transfer.  To the contrary, defendants could reasonably have assumed that since Kelley was aware of the conflict of interest, so was Afremov.  Moreover, even if these circumstances could be considered a badge of fraud, they are not enough, by themselves, to support a finding of actual fraudulent intent.  *Cf. In re Sherman*, 67 F.3d 1348, 1354 (8th Cir. 1995) ("[t]he presence of a single badge of fraud is not sufficient to establish actual fraudulent intent").

*b.  Constructive Fraud*

Afremov contends that the distribution was a constructively fraudulent transfer under

Minn. Stat. § 513.44(a)(2)(ii), which provides that a transfer will be deemed fraudulent if the

debtor made the transfer "without receiving a reasonably equivalent value in exchange for the

transfer or obligation" and if the debtor "intended to incur, or believed or reasonably should have

believed that the debtor would incur, debts beyond the debtor's ability to pay as they became

due."  As discussed above, Afremov has not pointed to any evidence that S&H did not receive

reasonably equivalent value in exchange for the transfer.  Likewise, Afremov has not pointed to

any evidence that S&H incurred a debt beyond its ability to pay as it became due.

Because Afremov has no evidence of either actual or constructive intent to defraud, the

Court grants summary judgment to defendants on his fraudulent-transfer claim.  *See New*

*Horizon Enters., Inc. v. Contemporary Closet Design, Inc.*, 570 N.W.2d 12, 15 (Minn. Ct. App.

1997) (under the UFTA, the aggrieved creditor generally bears the burden of proving actual or

constructive intent to defraud).

## 2.  Overbilling

Afremov has asserted numerous claims related to the fees charged in connection with the

civil and criminal cases.  One of these claims is that LaFond, Harrington, and Lonergan

overbilled for their services.  This is what might be called a "garden-variety" overbilling claim —

that is, a claim that defendants sometimes billed more time than was reasonable for certain tasks,

such as billing 30 minutes to write a letter that should have been written in 15 minutes.  This

claim should not be confused with Afremov's broader claim that the fee agreements under which

Afremov paid these fees were entered into in violation of LaFond's fiduciary duties.

LaFond, Harrington, and Lonergan move for summary judgment on this claim, arguing that it is precluded by the doctrine of account stated. The Court agrees.

An account stated is

> a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.

*Cherne Contracting Corp. v. Wasau Ins. Cos.*, 572 N.W.2d 339, 345 (Minn. Ct. App. 1997) (citation and quotations omitted). There is no dispute that Afremov received bills listing the work done on his behalf and the amount of time devoted to that work. Afremov Dep. 182-83. There is also no dispute that Afremov did not object to the amount of time for which he was billed until he belatedly raised the issue in this litigation.

Afremov argues that account stated is defeated by a demonstration of fraud or mistake. But there is no evidence of fraud or mistake concerning the amount of time that Afremov was billed for each task. Because Afremov did not object to the number of hours for which he was billed until several years after receiving and paying the bills — and because the record does not support any allegation of fraud or mistake — the Court concludes as a matter of law that Afremov assented to the number of hours for which he was billed. Defendants' motions for summary judgment on this claim are granted.

### 3. Fraudulent and Negligent Concealment

Afremov alleges that LaFond fraudulently and negligently concealed numerous facts from him. To prevail on a claim of fraudulent misrepresentation, a plaintiff must prove that the defendant made a false representation of a past or present material fact that is susceptible of

knowledge; that the defendant knew that the statement was false or asserted the fact as his own knowledge without knowing whether it was true or false; that the defendant intended that the plaintiff act on the statement; that the plaintiff in fact acted in justifiable reliance on the statement; and that the plaintiff suffered damages as a result. *Piekarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1493 (8th Cir. 1992) (applying Minnesota law).   To prevail on a claim of negligent misrepresentation, a plaintiff must prove that the defendant, in the course of his profession or during a transaction in which he had a financial interest, supplied false information to the plaintiff to guide the plaintiff in his own business transactions; that the defendant failed to use reasonable care in obtaining or communicating the information; that the plaintiff justifiably relied on the information; and that the plaintiff suffered damages as a result. *Hardin Cnty. Sav. Bank v. Hous. & Redev. Auth.*, 821 N.W.2d 184, 192 (Minn. 2012).

LaFond does not dispute that, as Afremov's attorney, he owed Afremov a fiduciary duty to disclose material facts.  *See STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002).  LaFond also does not dispute that a failure to disclose a material fact could give rise to liability under theories of fraud or negligence.  But this merely allows Afremov to overcome the usual rule that a failure to disclose information cannot constitute fraud.  *See Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 687 (Minn. Ct. App. 2010).  It does not relieve Afremov of his burden to prove the other elements of a fraud or negligent-concealment claim.  With these elements in mind, the Court turns to Afremov's specific allegations of fraudulent and negligent concealment.

*a. Civil and Criminal Liability from the Rug Story*

Afremov first alleges that LaFond concealed "the increased risk of criminal and civil liability if the [rug-story] strategy were pursued, including the information provided to LaFond by local criminal defense counsel with respect thereto . . . ."  Fourth Am. Compl. ¶ 82(a)(a); *see also id.* ¶ 90(a)(a).  But Afremov cannot prove justifiable reliance on the failure to inform him of the risk of *criminal* liability.  He admits that he knew that he was committing a crime when he filed the false tax returns; that the February 21, 2003 affidavit that he signed and submitted to the court in the AGA litigation contained false information; that it is wrong to lie under oath; and that, by lying under oath, he assumed the risk of whatever consequences might befall him on account of his perjury.  Afremov Dep. 29 (admitting that everything he said during his March 19, 2008 change-of-plea hearing was true and correct); *id.* 84-85 (admitting that he knows what perjury is, knows that it is wrong to lie under oath, and assumed the risk of any consequences from testifying falsely); *id.* at 212, 219-20 (admitting that he knew that the February 2003 affidavit was false when he signed it); Jones Decl., Mar. 16, 2011 [ECF No. 143] Ex. K at 17-18 (transcript of change-of-plea hearing during which Afremov admitted that he knew, at or before the time he caused the false tax returns to be filed, that they contained materially untrue statements and that filing false tax returns is unlawful).

Afremov has not offered proof of any increased risk of *civil* liability, nor evidence that he was damaged in any way by such an increased risk.  At oral argument, Afremov claimed that he was damaged because he paid more money to settle the counterclaims than he received in kickbacks; because he paid his attorneys to advance a story that was false and had no benefit for him; and because he made various payments to the AGA suppliers to shore up the truth of the rug

story (or to bribe them to play along with the story).  ECF No. 512 at 161-62, 166-68.  As to the first claim, Afremov offers no evidence that pursuing the rug story caused him to pay more money to settle the counterclaims than they were worth.  As to the second claim, Afremov's assertion that the rug story could not have benefitted him in the state-court action is contradicted by common sense and unsupported by the evidence in the record (as discussed below).  And finally, as to the claim about paying money to AGA suppliers, Afremov's decision to make these payments to support the rug story (or to bribe his coconspirators to go along with the story) cannot be attributable to LaFond's alleged concealment of material facts because Afremov already knew that the rug story was false.

Afremov makes much of evidence that some of his lawyers in the AGA litigation thought that the rug story was unbelievable, and Afremov alleges that these concerns were concealed from him.  Putting aside the question of whether a perjurer can sue his attorneys because they did not tell him that they did not believe his lies, the record demonstrates that Afremov was in fact aware that at least two of his lawyers — William Pentelovitch and Michael Lonergan — thought that the rug story was unbelievable.  Afremov Dep. 140-41, 198.  Indeed, these lawyers went to great lengths to explain the problems with the story to Afremov, including writing him a detailed letter regarding a major problem with the rug story.  Afremov Dep. 140-41, 243, 247, Fornwald Decl., Aug. 24, 2012 [ECF No. 479] Ex. 37.  These lawyers also conducted a mock jury trial — with Afremov testifying as a witness — after which every one of the more than two dozen mock

jurors disbelieved Afremov and rejected the rug story.  Pentelovitch Dep. 62-66; Lonergan

Dep. 211, 215-17.[3]

Afremov also contends that LaFond concealed the need to consult a tax expert before

amending his tax returns and concealed facts from Afremov's accountant and his other attorneys.

But Afremov does not explain why expert tax advice was necessary; as far as the record reflects,

there was nothing wrong with the amended returns except that they were premised on a story that

Afremov knew to be false.  And again, all of the facts that Afremov contends that LaFond

concealed were known to Afremov, and nothing prevented Afremov from sharing those facts

with his accountant or anyone else.  Because Afremov knew that the rug story was false, he

cannot prove that he justifiably relied on or was damaged by LaFond's failure to tell others that

the rug story was false (even assuming that LaFond, like Afremov, knew that the rug story was

false).  The Court therefore grants LaFond's motion for summary judgment on ¶¶ 82(a)(a) and

90(a)(a) of Afremov's concealment claims.

### b.  Minor Consequences of Not Pursuing the Rug Story

Afremov next alleges that LaFond concealed "the relatively minor potential

consequences, if any, from not pursuing the [rug-story] strategy . . . ."  *Id.* ¶¶ 82(a)(c), 90(a)(c).

In his brief, Afremov claims that LaFond failed to inform him "that the amendment of the

---

[3]Afremov's briefing is ambiguous concerning whether he knew the result of the mock
trial.  But it is hard to believe that Afremov testified before a mock jury and then did not ask his
attorneys what the mock jurors thought of his testimony.  The Court is unaware of any evidence
that Afremov was *not* told of the result, and Pentelovitch testified that Afremov reacted with
shock at the result.  Pentelovitch Dep. 65 ("Not a single person believed Mike Afremov.  Not
one. . . . And Afremov and LaFond are dumbfounded.  They can't believe what they're seeing.").

income tax returns had no positive effect on the civil case" and that "the rug transactions were irrelevant to the shareholder freeze-out claim."  ECF No. 494 at 13.

There are several problems with Afremov's arguments.  To begin with, even if, as Afremov contends, the rug transactions were irrelevant to the shareholder freeze-out claim that he made in the state-court action, they were obviously relevant to the counterclaims that the defendants made against him.  Those counterclaims were premised on the allegation that Afremov had received kickbacks from AGA suppliers in derogation of his legal duties to AGA; the whole point of coming up with the rug story was to refute this allegation.  Afremov argues that Pentelovitch and Lonergan thought that the strategy of amending his tax returns to bolster the rug story might be harmful or at least not helpful in defending against the counterclaims. *See* ECF No. 494 at 12-13.  But the fact that some of his lawyers thought that pursuing the rug story was a bad idea does not mean that the rug story would not have helped Afremov's position if it were true.  The reason why Pentelovitch thought that the rug story was unhelpful was not, as Afremov claims, because he thought the rug transactions were *irrelevant*; rather, Pentelovitch thought that the rug story was unhelpful because he found it *unbelievable*.  Pentelovitch Dep. 56. And, as discussed above, Afremov already knew that the rug story was false and that Pentelovitch found it unbelievable.

Finally, Afremov points to no evidence that the rug transactions were irrelevant (or that his lawyers thought that the rug transactions were irrelevant) to the shareholder freeze-out claim. To the contrary, Pentelovitch testified that he was concerned that Afremov's involvement in those transactions would be found to be inequitable conduct that would defeat Afremov's attempt to receive fair value for his shares in AGA.  Pentelovitch Dep. 55-56; 124-25; *see also* Lonergan

Dep. 224-25 (Lonergan was concerned that Afremov would not win control of the company because Afremov could not account for hundreds of thousands of dollars that was supposed to have been spent on rugs).[4]   The Court therefore grants LaFond's motion as to ¶¶ 82(a)(c) and 90(a)(c) of Afremov's concealment claims.

### c. Reason for Faegre's Withdrawal

Afremov also alleges that LaFond concealed "the fact that Afremov's Minnesota counsel in the AGA litigation withdrew, in substantial part, because of LaFond's insistence to pursue the [rug-story] strategy . . . ."  Fourth Am. Compl. ¶ 82(a)(b); *see id.* ¶ 90(a)(b).  There is no admissible evidence, however, that Faegre & Benson[5] (the "Minnesota counsel" to which Afremov refers) did, in fact, withdraw because of LaFond's insistence on pursuing the rug story.  The closest such evidence is the testimony of Faegre lawyer (now state-court judge) Edward Wahl that Wahl had "differences in strategic outlook and temperament" with LaFond.  Wahl Dep. 24-25.  The specific strategic differences that Wahl identified, however, did not include any disagreement with the rug story, and Wahl also testified that his strategic differences with LaFond did not lead him to believe that LaFond was dishonest.  *See* Wahl Dep. 97-100.  Notably, Afremov knew about Wahl's strategic differences with LaFond and knew that those strategic differences were a major reason for Faegre's withdrawal.  Afremov Dep. 175-76 (LaFond told

---

[4]The Court notes that there is an email from Pentelovitch in the record in which he relates that he told the AGA receiver that he thought the rug transactions did not matter to the outcome of the case and would not affect Afremov's status as a shareholder.  Fornwald Decl., Aug. 24, 2012 [ECF No. 479] Ex. 33.  If offered to prove that Pentelovitch in fact held these beliefs, however, the email would be hearsay and thus inadmissible.  It should also be noted that, when Pentelovitch spoke to the AGA receiver, he was advocating on Afremov's behalf.

[5]Faegre & Benson later became Faegre Baker Daniels LLP.

him that the "main reason" for Faegre's withdrawal was that LaFond and Wahl "had lots of confrontations about how to handle the case").

Afremov points to LaFond's handwritten notes indicating that Wahl mentioned "tax returns" when discussing his decision to withdraw, told LaFond that an attorney for one of the suppliers believed that LaFond had proposed backdating documents, and later told LaFond that he was concerned about ethical and criminal actions regarding the rug business and the supplier payments. *See* Fornwald Decl., Aug. 24, 2012 [ECF No. 479] Exs. 22, 23; Handler Decl. [ECF 500] Ex. G. Setting aside the cryptic nature of these notes, they are hearsay and thus inadmissible. If LaFond's notes were offered against LaFond merely to prove that Wahl uttered certain words, then the notes would be admissible as the statements of a party-opponent. *See* Fed. R. Evid. 801(d)(2). But Afremov seeks to introduce LaFond's notes not merely to prove what Wahl *said*, but to prove that what Wahl said was *true* — that is, that Wahl in fact withdrew because of concerns about the rug story. The notes are not admissible for that purpose. *See* Fed. R. Evid. 801(c) (a statement by an out-of-court declarant is hearsay if offered to prove the truth of the matter asserted); Fed. R. Evid. 802 (hearsay is not admissible except as otherwise allowed by federal statute or rule).

Finally, there is no evidence that Afremov would have done anything differently if he had known of this alleged reason for Faegre's withdrawal. As discussed above, Afremov knew at all times that the rug story was false, and there is ample evidence that Afremov knew that at least some of his lawyers thought that the rug story was unbelievable and that pursuing it was unwise. It defies belief that Afremov was willing to commit criminal acts despite knowing that some of his attorneys found the rug story unbelievable, but that he would not have committed criminal

acts if he had known that other of his attorneys found the rug story unbelievable.  No reasonable jury could find that Afremov would have done anything differently if he had known that the Faegre lawyers withdrew because LaFond insisted on pursuing the rug story.  The Court therefore grants LaFond's motion with respect to ¶¶ 82(a)(b) and 90(a)(b) of Afremov's concealment claims.

### d.  Success Bonus

Afremov next alleges that LaFond "[d]emand[ed] unreasonable and exorbitant fees in violation of [his] ethical obligations, and fail[ed] to disclose material facts necessary for Afremov to make informed decisions on the Success Fees . . . ."  Fourth Am. Compl. ¶ 82(b); *see id.* ¶ 90(b).  For the most part, however, Afremov fails to identify any facts that LaFond did not disclose.  For example, Afremov argues that the December 2004 fee agreement was improper because it was negotiated after LaFond's non-waivable conflict of interest arose.  ECF No. 494 at 13.  But this is not a misrepresentation claim; this is a claim that the agreement was unlawful, whether or not the conflict was disclosed.[10]  And if the agreement was in fact improper, Afremov will recover whatever fees he paid on account of the agreement; as a practical matter, the misrepresentation claim adds nothing to Afremov's legal-malpractice and breach-of-fiduciary-duty claims.

---

[10]Afremov separately alleges that failing to disclose the alleged conflict was a fraudulent and negligent misrepresentation.  Fourth Am. Compl. ¶¶ 82(d), 90(d).  Although LaFond purports to move for summary judgment on the entirety of Afremov's misrepresentation claims, he does not specifically address ¶¶ 82(d) or 90(d), and therefore the Court need not address them either.  Here, too, though, the Court questions whether these misrepresentation claims add anything to the legal-malpractice and breach-of-fiduciary-duty claims.

Similarly, Afremov argues that the agreement was negotiated at a time when Afremov was under substantial pressure and that the agreement provided LaFond with consideration incongruent with the benefit Afremov received.  ECF No. 494 at 13-14.  This is again a legal-malpractice or breach-of-fiduciary-duty claim, but Afremov tries to turn it into a misrepresentation claim by arguing that LaFond "did not disclose the impropriety of this arrangement to Afremov."  *Id.* at 14.  There is no dispute, however, that Afremov knew the terms of the agreement, and he obviously knew the pressures he was facing.

Afremov also contends that LaFond failed to disclose to Afremov's "fee counsel" — that is, the independent attorney hired by Afremov to advise him regarding the December 2004 fee agreement — the existence of the criminal subpoenas or LaFond's role in the events giving rise to the criminal investigation.  But Afremov himself knew of the subpoenas — he personally had been subpoenaed, and he had retained criminal counsel before entering into the December 2004 fee agreement — and he obviously knew of LaFond's role in advising him about the underlying events.  Afremov admitted that he had a complete opportunity to communicate with his fee counsel and that LaFond did not tell Afremov to withhold any information.  Afremov Dep. 207.  Because Afremov himself knew these facts — and because he could easily have communicated these facts to his fee counsel — Afremov cannot prove that he justifiably relied on or was damaged by LaFond's failure to disclose the same facts to Afremov's fee counsel.

As best as the Court can tell, Afremov has only one plausible fraud claim: the claim that LaFond lied to Afremov about his prospects of winning control of AGA.  Afremov casts this as a fraud-by-omission claim, arguing that LaFond withheld the fact that Afremov's lawyers thought that he was unlikely to prevail in obtaining control of AGA.  But this is, in reality, a

straightforward fraud claim.  Afremov testified that LaFond repeatedly told him that he would

win control of the company.  Afremov also points to evidence that his attorneys did not, in fact,

believe that he would win control of the company.  Thus, Afremov has alleged that LaFond

affirmatively lied to him.  Moreover, Afremov has provided evidence of a motive for LaFond to

lie.  Specifically, Afremov testified that much of his motivation for renegotiating the fee

agreement in late 2004 — an agreement under which LaFond agreed to take less money now for

a lot more money later — was Afremov's anticipated need to raise funds to purchase AGA in the

event that he won the right to do so.  This appears to be a viable fraud claim.  The Court therefore

grants summary judgment to LaFond with respect to ¶¶ 82(b) and 90(b) of Afremov's

concealment claims, except to the extent that those claims are based on Afremov's allegation that

LaFond lied when he told Afremov that he was likely win control of AGA.

### 4.  Malpractice

LaFond seeks summary judgment on certain aspects of Afremov's malpractice claim,

including those aspects that duplicate some of Afremov's fraud and negligent-concealment

claims.  Specifically, LaFond seeks summary judgment on ¶¶ 79(b) and 79(d), which allege that

LaFond failed to disclose the criminal exposure and increased civil liability arising out of the rug

story; failed to disclose the relatively minor potential consequences of not pursuing the story; and

failed to disclose material facts necessary for Afremov to make informed decisions regarding fee

agreements and payments.

A plaintiff bringing a malpractice claim, like a plaintiff bringing a misrepresentation

claim, must prove causation and damages (among other things).  *See Jerry's Enters., Inc. v.*

*Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 819 (Minn. 2006) (elements for

alleged malpractice in transactional matters); *Noske v. Friedberg*, 670 N.W.2d 740, 742-43

(Minn. 2003) (elements for alleged malpractice in litigation).  As discussed above, Afremov

cannot show causation or damages arising out of LaFond's failure to advise him of the risk of

criminal or civil liability.  The Court therefore grants LaFond's motion for summary judgment on

¶ 79(b).  Likewise, as discussed above, the only viable misrepresentation or failure-to-disclose

claim that Afremov has with respect to the fee agreements is his claim that LaFond failed to

disclose that Afremov was unlikely to win control of AGA.  To the extent that Afremov alleges

misrepresentations or failures to disclose in ¶ 79(d), therefore, the Court grants LaFond's motion,

with the exception noted above.[11]

### D.  Harrington and Lonergan's Motion

Harrington and Lonergan move to dismiss Afremov's legal-malpractice claims — and all

claims that are derivative of those legal-malpractice claims (including claims for breach of

fiduciary duty, misrepresentation, and unjust enrichment) — on the grounds that Afremov did not

serve the affidavit required by Minn. Stat. § 544.42, subd. 2(2).

Generally speaking, in order to bring a claim of malpractice against an attorney in a

lawsuit in which expert testimony will be used to establish a prima facie case, a plaintiff must

serve an *affidavit of expert review* with the pleadings.  Minn. Stat. § 544.42, subd. 2(1), 3.  This

affidavit must be drafted by the plaintiff's attorney and state that

---

[11]The Court notes that LaFond also seeks summary judgment on ¶ 71(b) and (d) of
Afremov's fiduciary-duty claim, which make allegations similar to those in ¶ 79(b) and (d).  A
plaintiff need not prove damages to prevail on a fiduciary-duty claim, however, *see Gilchrist v.
Perl*, 387 N.W.2d 412, 415-16 (Minn. 1986), and thus the Court cannot grant summary judgment
on these claims based on the lack of causation and damages.

> the facts of the case have been reviewed by the party's attorney
> with an expert whose qualifications provide a reasonable
> expectation that the expert's opinions could be admissible at trial
> and that, in the opinion of this expert, the defendant deviated from
> the applicable standard of care and by that action caused injury to
> the plaintiff . . . .

*Id.* subd. 3(a)(1). Then, within 180 days after service of the complaint, the plaintiff must serve

an *affidavit of expert disclosure*. *Id.* subd. 2(2), 4. The latter affidavit

> must be signed by the party's attorney and state the identity of each
> person whom the attorney expects to call as an expert witness at
> trial to testify with respect to the issues of negligence, malpractice,
> or causation, the substance of the facts and opinions to which the
> expert is expected to testify, and a summary of the grounds for
> each opinion.

*Id.* subd. 4(a).[3]

Failure to serve the affidavit of expert disclosure "results, upon motion, in mandatory

dismissal of each action with prejudice as to which expert testimony is necessary to establish a

prima facie case . . . ." *Id.* subd. 6(c). There is a safe harbor, however: Before a court can grant

a motion to dismiss on this basis, the court must issue specific findings concerning the

deficiencies in the affidavit of expert disclosure and give the nonmoving party 60 days in which

to cure them. *Id.* But this safe harbor does not apply unless the plaintiff timely served an

affidavit that at least minimally satisfied the statutory requirements; in other words, the safe

harbor does not apply when the plaintiff served no affidavit at all — or only a grossly deficient

affidavit — within the 180-day period. *See Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732

---

[3]The disclosure requirement can also be met by serving answers to interrogatories
containing the required information. Minn. Stat. § 544.42, subd. 4(a). The Court's references to
the required affidavit are intended to encompass the alternative method of complying by serving
answers to interrogatories.

N.W.2d 209, 219 (Minn. 2007) (holding that answers to interrogatories that were timely served but that failed to disclose the substance of the facts and opinions to which the expert was expected to testify were insufficient to invoke the safe harbor); *Bajwa v. Foster*, No. A06-1681, 2007 WL 2245801, at *2 (Minn. Ct. App. Aug. 7, 2007) ("This 60-day safe harbor provision is available only if the second affidavit is served before the 180-day period expires.").

Afremov first brought claims against Harrington and Lonergan in the third amended complaint. *See* ECF Nos. 147, 148. Afremov admits that he did not serve an affidavit of expert disclosure on either Harrington or Lonergan within 180 days of service of the third amended complaint. ECF No. 512 at 200-01. Under § 544.42, then, Afremov's legal-malpractice claims — as well as any claims that are derivative of those claims — must be dismissed with prejudice.[4]

---

[4]*Pearson v. Oxford Prop. Advisors, LLC*, No. A10-1766, 2011 WL 1833133, at *5 (Minn. Ct. App. May 16, 2011) ("Because allowing a plaintiff to simply list multiple alternative claims without fleshing out the logic or merits of those claims would create a significant loophole in Minn. Stat. § 544.42, we conclude the district court did not err in dismissing Pearson's alternative claims."); *Club Vista Fin. Servs., L.L.C. v. Maslon, Edelman, Borman & Brand, LLP*, No. 10-CV-1374, 2011 WL 4947629, at *15 (D. Minn. Oct. 18, 2011) (§ 544.42 applies to claims derivative of legal-malpractice claims); *DeMartini v. Stoneberg, Giles & Stroup, P.A.*, No. A11-649, 2011 WL 5026392, at *3 (Minn. Ct. App. Oct. 24, 2011) (affirming dismissal of contract and misrepresentation claims under § 544.42 because they were merely alternative means of pleading the same malpractice cause of action); *Bajwa*, 2007 WL 2245801, at *4 (affirming dismissal of contract, fiduciary, misrepresentation, and fraud claims under § 544.42); *Haefele v. Franson*, No. A06-1090, 2007 WL 1815859, at *6 (Minn. Ct. App. June 26, 2007) (trial court properly dismissed fiduciary-duty claim where it had dismissed malpractice claim under § 544.42); *Berman v. Maslon, Edelman, Borman & Brand, LLP*, No. A06-351, 2006 WL 3734278, at *3 (Minn. Ct. App. Dec. 19, 2006) (affirming dismissal of misrepresentation claim that was merely a recasting of a malpractice claim); *Albert v. Binsfeld*, No. C1-02-632, 2003 WL 139529, at *2 (Minn. Ct. App. Jan. 21, 2003) (affirming dismissal, under § 544.42, of contract, unjust enrichment, and other claims); *Mosby v. Engh*, No. A05-901, 2006 WL 4643133, at *5 (Minn. Ct. App. May 2, 2006) ("Mosby cannot avoid the expert-affidavit requirements by recasting what is essentially a malpractice claim into a fraud claim by asserting that Engh said that he had the skill, knowledge, and experience of an appellate specialist, but the statement was false.").

This means that Afremov's fiduciary-duty, concealment, and unjust-enrichment claims must be dismissed, as it is plain that they are based on the same facts as his legal-malpractice claims and arise solely out of Afremov's attorney-client relationship with Harrington and Lonergan.[5]   That relationship is the source of the fiduciary duties that were allegedly breached.   Similarly, that relationship is the only reason why Afremov can assert a cause of action for fraudulent and negligent concealment; ordinarily, in the absence of a fiduciary or other special relationship, there is no duty to disclose.[6]   *See Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 687 (Minn. Ct. App. 2010).

---

[5]The Minnesota Court of Appeals recently held that a plaintiff bringing a breach-of-contract claim alleging that a law firm charged excessive fees need not meet the requirements of § 544.42.  *See Fredrikson & Byron, P.A. v. Saliterman*, No. A12-0906, 2012 WL 6652633, at *3-4 (Minn. Ct. App. Dec. 24, 2012).  In this case, however, Afremov has not brought a breach-of-contract claim; instead, he alleges that defendants committed malpractice, breached fiduciary duties, concealed material facts, and were unjustly enriched.

Moreover, the Court agrees with Harrington and Lonergan that, to the extent that Afremov contends that the fees that he was obligated to pay under the December 2004 fee agreement were excessive and unreasonable, Afremov's claim is barred by the statute of limitations.  (Indeed, it is likely that most, if not all, of Afremov's claims against Harrington and Lonergan are barred by the statute of limitations.)  As the Court explained at oral argument, claims against Harrington and Lonergan that accrued before April 2005 are time-barred.  The success bonus was not paid until July 2005.  But Afremov claims that he is entitled to recover the bonus because the amended fee agreement under which it was paid was wrongfully induced.  Afremov entered into that amended fee agreement in December 2004, and, if his theory is correct, he suffered compensable damage at that time.  After all, he was contractually obligated to pay the success bonus as of December 2004, and he incurred legal fees in paying independent counsel to help him negotiate what he now contends was an unreasonable agreement.  *See Antone v. Mirviss*, 720 N.W.2d 331, 336 (Minn. 2006).  The contingent amount of the success bonus is irrelevant.  *Id.* at 337-38 (inability to calculate precise amount of damages does not preclude the running of the limitations period).

[6]As discussed above, Afremov alleges one claim of affirmative fraud, namely, that defendants misrepresented that he was likely to win control of AGA, thereby inducing Afremov to enter into the December 2004 amended fee agreement.  But as noted above, claims based on that agreement are time-barred as to Harrington and Lonergan.

Afremov argues that applying § 544.42 in this manner would elevate form over substance because Afremov complied with § 544.42 with respect to S&H and LaFond and he is essentially bringing the same claims against Harrington and Lonergan. The Court disagrees. An attorney who is sued for malpractice is entitled to a specific disclosure of the ways in which *that attorney* is alleged to have breached the standard of care. *See Haefele v. Franson*, No. A06-1090, 2007 WL 1815859, at *3 (Minn. Ct. App. June 26, 2007) ("Both the statute and the discovery requests contemplate enough specificity so that the attorney charged with negligence can have an understanding of the ways in which it is claimed that he breached the standard of care and what facts support that conclusion."). Afremov cites no authority for the proposition that compliance with § 544.42 with respect to one attorney enables a plaintiff to sue a second attorney without having an expert articulate, in the manner required by § 544.42, the basis for holding the second attorney liable. Moreover, this is not a matter of form over substance. Afremov's failure to be clear about how each attorney breached the standard of care has created a great deal of confusion and a great deal of work for the defendants and the Court.

Afremov also argues that his claims against Harrington and Lonergan should not be dismissed because neither attorney was prejudiced by Afremov's failure to comply with § 544.42. Afremov cites no authority supporting his argument, undoubtedly because no such authority exists. To the contrary, the Minnesota courts have strictly enforced the requirements of § 544.42, even when strict enforcement has led to harsh results. *See Middle River-Snake River Watershed Dist. v. Dennis Drewes, Inc.*, 692 N.W.2d 87, 91 (Minn. Ct. App. 2005) ("failure to strictly adhere to the requirements of expert review and disclosure undermines the legislature's procedural reforms in professional-malpractice actions"); *Banken v. Hoke*, No. A08-0160, 2009

-26-

WL 366279, at *4 (Minn. Ct. App. Feb. 17, 2009) (rejecting argument that mandatory dismissal

under § 544.42 was overly harsh and violated public policy and holding that the court must apply

the clear language of the statute); *LaBorde v. Castleman*, No. A05-1805, 2006 WL 2053158,

at *2 (Minn. Ct. App. July 25, 2006) ("Although acknowledging the harshness of the remedy,

courts have consistently held that dismissal with prejudice is mandated when a party fails to

comply with an expert-affidavit requirement.").

      Afremov also suggests that this is a "rare" or "exceptional" case in which expert

testimony is not required because defendants had an unwaivable conflict of interest as a matter of

law.  *See Fontaine v. Steen*, 759 N.W.2d 672, 677 (Minn. Ct. App. 2009) (with the exception of

"rare" and "exceptional" cases, expert testimony is required in malpractice cases to establish the

standard of care, its breach, and that the breach was the proximate cause of damages).  But this

case involves an extremely complex factual background and multiple intersecting allegations of

conflicts of interest and other breaches of fiduciary duty.  Highly respected legal experts have

taken sharply opposing positions on whether Harrington and Lonergan had a conflict or

otherwise breached their fiduciary duties.  The Court itself has had — and a jury certainly will

have — difficulty understanding and sorting through the parties' claims and defenses.  This is

most certainly not a "rare" and "exceptional" case in which expert testimony is not required.

      Afremov also contends that he timely served the affidavit because it was served within

180 days of service of the *fourth* amended complaint.  Afremov cites no authority for the

proposition that he can unilaterally restart the clock on his 180 days by amending his complaint.

Again, the absence of authority is not surprising.  Minnesota courts have consistently held that

the 180-day time period begins to run from the commencement of the lawsuit.  *Sheehan v. Suk*,

No. A09-1383, 2010 WL 2035814, at *3 (Minn. Ct. App. May 25, 2010) ("There is . . . ample caselaw confirming that the 180-day deadline runs from the commencement of the lawsuit."); *Bajwa*, 2007 WL 2245801, at *3 (rejecting argument that affidavit was timely because it was served within 180 days after denial of motion for default judgment and holding that time began to run when action was commenced).  This makes sense, as permitting a plaintiff to restart the 180-day deadline by amending his complaint would create a large loophole in § 544.42.

Finally, Afremov argues that Harrington and Lonergan waived the protections of § 544.42 by failing to raise their defense at an earlier stage in the case.  But Afremov cites no authority for the proposition that a defendant must raise this issue at any particular time.  Moreover, the Court told defendants in April 2011 that it would not hear any more dispositive motions until discovery was completed.[7]  *See* ECF No. 181 at 44-45, 83, 143-44.  Thus, Harrington and Lonergan were not able to make their § 544.42 argument until now.  Under these circumstances, Harrington and Lonergan can hardly be held to have waived their defense by not raising it earlier.

For these reasons, the Court grants Harrington and Lonergan's motion for summary judgment and dismisses them from this case.  Afremov's failure to comply with § 544.42 means that all of Afremov's claims against Harrington and Lonergan must be dismissed, with the exception of Afremov's fraudulent-conveyance and overbilling claims.  Those claims are dismissed on the merits for the reasons described above.

---

[7]The Court made an exception for a motion to dismiss in August 2011.  ECF No. 181 at 82-83; ECF No. 263.  At that point, however, the 180-day deadline had not yet passed, so Harrington and Lonergan could not have raised the § 544.42 objection at that time, even if they had received the Court's permission to do so.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.    The motion of defendants Michel A. LaFond and Sulloway & Hollis, P.L.L.C. for

partial summary judgment [ECF No. 450] is GRANTED IN PART and DENIED

IN PART.

a.    The motion is GRANTED as to the following claims, and these claims are

DISMISSED WITH PREJUDICE AND ON THE MERITS:

i.    All claims that defendants overbilled for their services.

ii.    Paragraph 79(b) of Count II (Legal Malpractice).

iii.    Paragraph 79(d) of Count II (Legal Malpractice), to the extent that

¶ 79(d) alleges misrepresentations or failures to disclose, with the

exception of the claim that LaFond misrepresented, during the

negotiation of the second amended fee agreement, that plaintiff

was likely to succeed in gaining control of AGA Medical

Corporation.

iv.    Paragraph 82(a) of Count III (Fraudulent Concealment) and

paragraph 90(a) of Count IV (Negligent Concealment).

v.    Paragraph 82(b) of Count III (Fraudulent Concealment) and

paragraph 90(b) of Count IV (Negligent Concealment), with the

exception of the claim that LaFond misrepresented, during the

negotiation of the second amended fee agreement, that plaintiff

was likely to succeed in gaining control of AGA Medical

Corporation.

      vi.     Count VI (Fraudulent Conveyance).

    b.     The motion is DENIED in all other respects.

2.     Plaintiff's motion for partial summary judgment [ECF No. 473] is DENIED.

3.     The motion of defendants John R. Harrington and Michael M. Lonergan to

dismiss or for summary judgment [ECF No. 476] IS GRANTED.  All claims

against Harrington and Lonergan are DISMISSED WITH PREJUDICE AND ON

THE MERITS.

Dated:  February  7 , 2013            s/Patrick J. Schiltz_____
                                    Patrick J. Schiltz
                                    United States District Judge